# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA KENNETH MONDEREN, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-CV-45-SNLJ |
| | ) | |
| KAVIN D. PRICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Joshua Monderen's Application to Proceed in District Court without Prepaying Fees or Costs. (ECF No. 2). Having reviewed the Application and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $31.96. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will allow Plaintiff to proceed on his excessive force claim against Defendant Kavin Price in his individual capacity. The Court will dismiss the remainder of the Complaint under 28 U.S.C. § 1915(e)(2).

### Initial Partial Filing Fee

Under 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis must pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court will assess an initial partial filing fee equal to the greater of either: (1) 20 percent of the average monthly deposits in the prisoner's account for the six months immediately preceding the filing of the lawsuit, or (2) 20 percent of the average monthly balance in the prisoner's account over the same six-month period. 28 U.S.C. § 1915(b)(1). After payment of the initial partial filing fee, the prisoner must make monthly payments of 20 percent

of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the prisoner has paid the fee in full. *Id*.

In support of his Application, Plaintiff has submitted a certified account statement that reflects deposit activity from July 17, 2023 to January 17, 2024. (ECF No. 3). Because Plaintiff filed this action on March 6, 2024, the statement does reflect the entire six-month period immediately preceding the filing of his Complaint, as required by 28 U.S.C. § 1915(a)(2). Nevertheless, the Court was able to calculate an average monthly balance of $159.78 for the six-month period from August 2023 to January 2024. Thus, the Court will assess an initial partial filing fee of $31.96, representing 20 percent of Plaintiff's average monthly balance over that time.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). Even so, self-represented plaintiffs must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912,

2

914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**The Complaint**

Plaintiff is an inmate at the Southeast Correctional Center ("SECC") in Charleston, Missouri. He brings this action under 42 U.S.C. § 1983 against Correctional Officer Kavin D. Price and Warden Bill Stange. Plaintiff sues both defendants in their individual and official capacities. He is self-represented in this matter.[1]

Plaintiff states that on July 7, 2023, Defendant Price and another officer arrived at his cell to escort him to a "sick call" appointment. The officers restrained Plaintiff's wrists before opening the cell door. Plaintiff asserts that while walking to the appointment, Price grabbed Plaintiff's left

---

[1] Plaintiff drafted his Complaint using the Court's "Prisoner Civil Rights Complaint" form. In the "Previous Litigation" section of the form, Plaintiff states that he has had a case dismissed under the "three strikes" provision of 28 U.S.C. § 1915(g). Having performed an extensive search of Plaintiff's litigation history on PACER—the online portal for the federal court system—the Court concludes that Plaintiff has not had a cased dismissed under the "three strikes" provision. The Court will attribute Plaintiff's response to misunderstanding.

3

arm and "aggressively pulled [him] forward[.]" Plaintiff, who claims he was walking at a reasonable speed, asked Price to stop "aggressively pulling on him[.]"Price responded by "aggressively telling Plaintiff to walk forward[.]" When Plaintiff again asked Price to stop pulling, Price "grabbed Plaintiff's arms behind his back in secure wrist restraints and ran him into the concrete wall . . . headfirst[.]" Price then shoved Plaintiff into two shower doors. Plaintiff states that another officer arrived at this point and told Price to let go of Plaintiff. Price then screamed "I'll beat yo ass" at Plaintiff and punched him in the back of the head. Plaintiff alleges he suffered a swollen knee, a laceration to his left elbow, and a laceration to his head. He reports daily elbow pain and an inability to fully close his arm.

Plaintiff attached several exhibits to his Complaint. In Exhibit A, which Plaintiff identifies as an extension of the "Statement of Claim" portion of his Complaint, Plaintiff adds that Price issued him a Conduct Violation Report following their interaction on July 7, 2023. In the Report, attached as Exhibit B, Price states that Plaintiff "shoulder checked" him and started to break away from the escort. Plaintiff states in Exhibit A that a caseworker interviewed him on December 6, 2023, and concluded that Plaintiff did not "shoulder check" Price and that Price used excessive force on July 7. Plaintiff reports that Price was subsequently assigned to a new housing unit and "soon after quit or was fired due to this incident." He also alleges that officers interfered with his attempt to file an Informal Resolution Request ("IRR") and that he received inadequate medical attention for his elbow.

The remaining attachments, Exhibits C through G, contain various documents, including: (1) letters to Plaintiff from his grandmother, (2) letters from Plaintiff to "Ms. Davis" regarding the status of his IRRs and Grievances, (3) copies of Plaintiff's IRRs and Grievances, (4) copies of the responses to Plaintiff's IRRs and Grievances, and (5) several medical records. Plaintiff has

4

underlined or otherwise highlights the portions of these documents that he believes support his allegations. He seeks $5,000 in nominal damages, $75,000 in compensatory damages, and $2,000 in punitive damages.

## Discussion

Plaintiff explicitly alleges that Defendant Price used excessive force in violation of the Eighth Amendment. Liberally construed, Plaintiff also appears to assert a claim of deliberate indifference to a serious medical need.[2] For the reasons below, the Court will issue process on Plaintiff's excessive force claim against Defendant Price in his individual capacity. The Court will dismiss the remaining claims.

### 1. Official Capacity Claims

Plaintiff sues both defendants in their individual and official capacities. An official-capacity claim against an individual is a claim "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Put another way, "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer").

Plaintiff's official-capacity claims are not cognizable under § 1983. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights."

---

[2] While Plaintiff devotes a significant number of attachments to the alleged mishandling of his IRRs and grievances, he does not allege that any official intentionally interfered with the process in retaliation for his complaints about Price. Thus, even liberally construed, the Complaint does not assert a claim of retaliation in violation of the First Amendment. Even if it did, Plaintiff alleges no facts showing that Defendant Price or Defendant Stange themselves engaged in retaliation. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights").

5

*McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). What is more, in the absence of a waiver, the Eleventh Amendment bars suit for damages against a state official acting in his official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). For these reasons, the Court will dismiss Plaintiff's claims against both Defendant Price and Defendant Stange in their official capacities.

   **2. Excessive Force Claim**

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically."). In determining whether force was used in good faith, courts should consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Stewart v. Precythe*, 91 F.4th 944, 949 (8th Cir. 2024) (quoting

6

*Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The Court must consider precisely what Plaintiff alleges against each defendant. *See Stewart*, 91 F.4th at 950.

### A. Defendant Price

Plaintiff asserts that Defendant Price aggressively pulled his arms while escorting him to his medical appointment. Plaintiff states that he twice asked Price to stop and that Price responded by grabbing Plaintiff's restrained wrists and shoving him headfirst into a concrete wall and two shower doors. According to Plaintiff, another officer arrived and told Price to let go of Plaintiff. Price then screamed "I'll beat yo ass" at Plaintiff and punched him in the back of the head. Plaintiff reports injuries to his elbow, head, and knees.

When reviewing a complaint under 28 U.S.C. § 1915(e)(2), the Court must accept all well-pleaded allegations as true. *See* White, 750 F.2d at 722. Taken as true, the factual allegations in Plaintiff's Complaint allow the Court to reasonably infer that Defendant Price is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. According to the Complaint, Price had already restrained Plaintiff's wrists when he shoved Plaintiff into the wall. Price then punched Plaintiff in the back of the head even after another officer arrived. These allegations establish a plausible excessive force claim. *See Fisherman v. Launderville*, 100 F.4th 978, 981 (8th Cir. 2024) ("[A] correctional officer uses excessive force if he maliciously uses force against an inmate who has been subdued, even if force might have been justified to control the inmate only moments before.") (quoting *Dean v. Jones*, 984 F.3d 295, 310 (4th Cir. 2021)). For these reasons, the Court will allow Plaintiff's claim to proceed against Defendant Price in his individual capacity.

### B. Defendant Stange

Plaintiff does not allege that Defendant Stange used excessive force. He instead relies on legal conclusions to establish Stange's liability. For example, Plaintiff states: "Defendants were

7

personally responsible for the violation of Plaintiff's rights[.]" The Court need not accept such allegations as true. *See Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation"). Further, it is not enough that Defendant Stange is the Warden of SECC. To succeed against Stange in his individual capacity, Plaintiff must allege facts demonstrating Stange's personal responsibility for the alleged harm. *See Madewell*, 909 F.2d at 1208. Conclusory allegations about his supervisory role do not establish the requisite personal involvement. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability.") (citation and internal quotation marks omitted). For these reasons, the Court will dismiss Plaintiff's excessive force claim against Defendant Stange.

### 3. Deliberate Indifference to a Serious Medical Need

Broadly construed, Plaintiff's Complaint can be understood to assert a claim of deliberate indifference to a serious medical need. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, an inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997). To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *see also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019).

8

Page five of Plaintiff's Complete Medical Record History includes the following line of text: "X-Ray Encounter Appointment Date 07/17/2023." Under that text, Plaintiff writes: "Much needed x-ray on injury rescheduled." On page eight, Plaintiff writes "x-ray ordered" next to "07/25/2023 Xrays Initiation MSR filed." Plaintiff states "another x-ray ordered" next to "08/16/2023" on page 22. Finally, on a report signed by Dr. Lloyd Wagner on November 4, 2023, Plaintiff writes: "X-ray on 11/3/23. Finally, after waiting since 7-17-23 for first Doctor Ordered x-ray." The report itself shows Plaintiff suffered no fracture or effusion.

Nothing in the record suggests Plaintiff suffered from an objectively serious medical need, let alone that Defendant Price and Defendant Stange actually knew of and disregarded that need. In fact, Plaintiff makes no allegations against either defendant relating to the treatment of his elbow. As explained above, to succeed on an individual-capacity claim, Plaintiff must allege facts demonstrating each defendant's personal responsibility for the alleged harm. *See Madewell*, 909 F.2d at 1208. Plaintiff has not done so here. For that reason, the Court will dismiss Plaintiff's deliberate indifference claim against both defendants.

**Motion to Appoint Counsel**

Plaintiff has also filed a motion to appoint counsel. (ECF No. 4). A litigant in a civil case does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent

litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

Having reviewed these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated up to this point that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court may entertain future motions for appointment of counsel as the case progresses.

### Conclusion

For the foregoing reasons, the Court will allow Plaintiff to proceed on his excessive force claim against Defendant Price in his individual capacity. The Court will dismiss the remainder of the Complaint under 28 U.S.C. § 1915(e)(2).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial partial filing fee of $31.96 **within thirty (30) days** of the date of this order. Plaintiff shall make his remittance payable to "Clerk, United States District Court," and shall include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) a statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel is (ECF No. 4) **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue as to Defendant Kavin Price, an employee of the Missouri Department of Corrections.

**IT IS FURTHER ORDERED** that the remainder of Plaintiff's claims are **DISMISSED** without prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

_____
**STEPHEN N. LIMBAUGH, JR.**
**SENIOR UNITED STATES DISTRICT JUDGE**

Dated this 8th day of July, 2024.